# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DUSTIN HELLARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19-CV-00043-GKF-CDL |
| ) | |
| MID CENTURY INSURANCE COMPANY ) | |
| d/b/a FARMERS INSURANCE, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter comes before the court on the *Daubert* Motion to Exclude the Testimony of Plaintiff's Expert Richard Cary [Doc. 92] of defendant Mid-Century Insurance Company (MCIC). For the reasons set forth below, the motion is granted in part and denied in part.

### Background/Procedural History

This case relates to an insurance dispute. Mr. Hellard made an insurance claim under an Artisan Contractor Premier Policy issued by MCIC to Hellard's employer, Gilley Ventures LLC, for injuries sustained while driving a Gilley-owned vehicle in the course and scope of his employment.

When MCIC had not issued any payment by January 28, 2019, Mr. Hellard initiated this litigation. [Doc. 2]. The Amended Complaint, the operative pleading, includes claims for breach of contract and breach of the implied duty of good faith and fair dealing, and seeks punitive damages. [Doc. 10]. In an Opinion and Order dated November 10, 2020, the court denied MCIC's summary judgment motion as to all of plaintiff's claims, as well as his request for punitive damages. [Doc. 133]. On February 5, 2021, Mr. Hellard dismissed the breach of contract claim

with prejudice. [Doc. 155]. The bad faith claim is currently scheduled for the March 15, 2021 trial docket. [Doc. 148].

Mr. Hellard retained Richard N. Cary to offer expert opinions as to MCIC's handling of Mr. Hellard's insurance claim. [Doc. 92-1]. Mr. Cary has over thirty years of experience in the insurance industry, primarily in Oklahoma. [Doc. 92-1, pp. 8-9]. On February 5, 2020, Mr. Cary issued a report pursuant to Fed. R. Civ. P. 26(a)(2) setting forth his opinions as to whether MCIC's claims handling "was proper and followed generally accepted industry practices and standards." [Doc. 92, p. 1]. In the report, Mr. Cary sets forth ten specific opinions: (1) MCIC failed to conduct a prompt, thorough, and reasonable investigation, timely evaluate the damages, and make a reasonable offer; (2) MCIC placed their financial interests ahead of their insured's interest, which is unreasonable; (3) MCIC failed to adopt and implement reasonable standards for the investigation, evaluation, and settlement of uninsured motorist claims; (4) MCIC failed to conduct proper training of their staff in the investigation, evaluation, and settlement of uninsured motorist claims; (5) MCIC failed to meet the expectation that claims will be handled according to the insurance contract and accepted industry standards; (6) MCIC forced Mr. Hellard to file suit in order to be fully compensated for his injuries; (7) MCIC failed to act in good faith to effectuate a prompt, fair, and reasonable settlement after liability had become reasonably clear; (8) MCIC's actions "to not make an offer cannot be classified as a mistake. They were clearly deliberate and intentional"; (9) the numerous delays by MCIC cannot be justified when dealing with a first party insured; and (10) MCIC acted in bad faith. [Doc. 92-1, pp. 5-6]. With respect to his opinions regarding unreasonable delays, Mr. Cary included a recitation of facts he believed demonstrated unwarranted delays. [*Id.* at pp. 2-3].

In addition to his specific opinions, Mr. Cary included a general discussion of insurance standards relevant to Mr. Hellard's claim, with emphasis added to the standards Mr. Cary asserts "[MCIC] clearly failed to comply with," as well as recitation of provisions of the Oklahoma Unfair Claim Settlement Practices Act, Okla. Stat. tit. 36, § 1250.1, *et seq.* (OUCSPA), he asserts were violated. [*Id.* at pp. 3-4]. Finally, Mr. Cary includes three paragraphs under the heading, "Training," that generally discuss an insurer's duty to train its employees. [*Id.* at pp. 4-5].

MCIC moves to exclude Cary's opinions and testimony pursuant to Fed. R. Evid. 702. [Doc. 92]. Mr. Hellard responded in opposition, [Doc. 109], and MCIC filed a reply [Doc. 123]. Neither party requests a hearing on the motion. *See generally* [Doc. 92; Doc. 109]. Based on the its review, the court concludes that the motion may be resolved on the briefs and that a hearing is unnecessary.[1]

## *Daubert* Standard

Pursuant to Federal Rule of Evidence 702,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)   the testimony is based on sufficient facts or data;
>
> (c)   the testimony is the product of reliable principles and methods; and
>
> (d)   the expert has reliably applied the principles and methods to the facts of the case.

---

[1] *Daubert* does not mandate a hearing and the decision whether to hold a hearing rests in the court's discretion. *United States v. Nacchio*, 555 F.3d 1234, 1253-56 (10th Cir. 2009); *see also Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000) (*Daubert* hearing "is not specifically mandated").

Rule 702 imposes on the trial court an important gate-keeping obligation, "to 'ensure that any and all [expert] testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). Thus, "the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co., Ltd.*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). To determine whether an expert's opinion is admissible, the district court must generally undertake a two-step analysis: (1) first, to determine "whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion," and (2) second, to determine "whether the expert's opinion is reliable by assessing the underlying reasoning and methodology[.]" *Mathis v. Huff & Puff Trucking, Inc.,* 787 F.3d 1297, 1307 (10th Cir. 2015) (internal quotations omitted).

However, "[t]he 'touchstone' of admissibility of expert testimony is its helpfulness to the trier of fact." *Wilson v. Muckala,* 303 F.3d 1207, 1219 (10th Cir. 2002); *see also* Fed. R. Evid. 702(a) (emphasis added) ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge *will help the trier of fact to understand the evidence or to determine a fact in issue*."). "When the normal experiences and qualifications of laymen jurors are sufficient for them to draw a proper conclusion from given facts and circumstances, an expert witness is not necessary and is improper." *Wilson,* 303 F.3d at 1219 (quoting *Frase v. Henry,* 444 F.2d 1228, 1231 (10th Cir. 1971)). "The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible." *Nacchio*, 555 F.3d at 1241.

**Analysis**

MCIC does not challenge Mr. Cary's qualifications. Thus, the court determines only whether Mr. Cary's opinions are (1) reliable and (2) helpful to the jury.

Insofar as Mr. Cary opines that MCIC acted in bad faith or failed to act in good faith, Mr. Cary's testimony is an improper legal conclusion and must be excluded. *See Anderson v. Suiters*, 499 F.3d 1228, 1237 (10th Cir. 2007) ("[T]estimony on ultimate questions of law, *i.e.,* legal opinions or conclusions, is not favored."); *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 2003) (an expert may not "state legal conclusions drawn by applying the law to the facts"); *SFF-TIR, LLC v. Stephenson,* 250 F. Supp. 3d 856, 1004 (N.D. Okla. 2017) ("Expert testimony is likely inadmissible when the expert's testimony tracks the language of the legal principle or statute at issue or when terms employed have a specialized legal meaning."). Thus, Mr. Cary's seventh, ninth, and tenth opinions included in the "Opinions" section of his report are excluded. Nor may Mr. Cary offer any other opinion that MCIC's conduct was "unreasonable" or "unfair," or that MCIC violated Oklahoma law. *See Koontz v. CSAA Fire & Cas. Ins. Co.*, No. CIV-18-801-SLP, 2019 WL 8331472, at *3 (W.D. Okla. Aug. 22, 2019). A jury is capable of evaluating whether an insurer acted in bad faith on its own. *See, e.g., City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 587 (10th Cir. 1998) (jury "capable of determining the bad faith issue on its own"); *see also Vining ex rel. Vining v. Enter. Fin. Grp., Inc.*, 148 F.3d 1206, 1218 (10th Cir. 1998) ("'[I]t is plainly within the trial court's discretion' to determine whether expert testimony is admissible when the expert offers to testify on an issue that a jury is capable of assessing for itself.").

Likewise, Mr. Cary cannot testify to the requirements of Oklahoma law, including the OUCSPA. It is axiomatic that "[i]t is not for witnesses to instruct the jury as to the applicable principles of law, but for the judge." *Specht v. Jensen,* 853 F.2d 805, 808 (10th Cir. 1988) (quoting

*Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977)). Mr. Cary purports to set forth MCIC's "duties," but such testimony is improper, unhelpful, and likely to confuse the jury. *See Bright v. Ohio Nat'l Life Assurance Corp.*, No. 11-CV-475-GKF-FHM, 2013 WL 121479, at *4 (N.D. Okla. Jan. 9, 2013); *Koontz*, 2019 WL 8331472, at *3; *Magallan v. Zurich Am. Ins. Co.*, No. 16-CV-0668-CVE-FHM, 2017 WL 4012964, at *10 (N.D. Okla. Sept. 12, 2017).

With regard to Mr. Cary's opinions related to the OUCSPA, Mr. Hellard cites *Higgins v. State Auto Property & Casualty Insurance Co.*, for the proposition that "evidence regarding violations of the Act is admissible for the narrow purpose of providing guidance in determining 'whether particular conduct on the part of an insurer is unreasonable and sufficient to constitute a basis for a bad faith claim.'" [Doc. 109, p. 8 (citing *Higgins v. State Auto Prop. & Cas. Ins. Co.*, No. 11-CV-90-JHP-TLW, 2012 WL 2571278 (N.D. Okla. July 2, 2012) (quoting *Beers v. Hillory*, 241 P.3d 285 (Okla. Civ. App. 2010))]. However, *Higgins* was decided prior to the Oklahoma Court of Civil Appeals decision in *Aduddell Lincoln Plaza Hotel v. Certain Underwriters at Lloyd's of London*, wherein the court clarified:

> [Plaintiff] relies on *Beers v. Hillory*, 2010 OK CIV APP 99, 241 P.3d 285. "[T]he UCSPA can provide the district court with guidance in determining whether particular conduct on the part of an insurer is unreasonable and sufficient to constitute a basis for bad faith." *Beers,* 2010 OK CIV APP 99, ¶ 30, 241 P.3d 285. The *Beers* quotation was in the context of a district court's consideration of a motion for summary judgment. . . . The Unfair Claims Settlement Practices Act may provide guidance to a trial court in determining whether to grant summary judgment, *but it does not function as an appropriate guide for a jury to determine bad faith*.

348 P.3d 216, 224 (Okla. Civ. App. 2014) (emphasis added).[2] Moreover, the court confirmed that the OUCSPA "does not establish standards of care or standards of conduct for measuring whether

---

[2] Decisions of the Oklahoma Court of Civil Appeals released for publication by that court are not precedential, but "shall be considered to have persuasive effect." Okla. Sup. Ct. R. 1.200(d)(2).

an insurer has violated its duty of good faith and fair dealing." *Id.* at 223.  Since *Aduddell*, federal courts, including this one, have generally excluded evidence regarding the OUCSPA.  *See, e.g., Godfrey v. CSAA Fire & Cas. Ins. Co.*, No. CIV-19-00329-JD, 2020 WL 1056306, at *5 (W.D. Okla. Mar. 4, 2020); *Koontz,* 2019 WL 8331472, at *3; *Dennis v. Progressive N. Ins. Co.*, No. CIV-17-182-SLP, 2018 WL 4871039, at *3 (W.D. Okla. Apr. 9, 2018); *Thomas v. Farmers Ins. Co.*, No. 16-CV-17-TCK-JFJ, 2018 WL 2323794, at *1 (N.D. Okla. Feb. 16, 2018); *Stroud v. Liberty Mut. Ins. Co.*, No. 15-CV-363-GKF-PJC, 2016 WL 10038544, at *2 (N.D. Okla. Oct. 11, 2016).  The court sees no reason to deviate from its prior practice, and Mr. Cary is prohibited from offering any testimony or evidence regarding the OUCSPA.

For these reasons, the portion of Mr. Cary's first opinion setting forth MCIC's "duty" and any other statements in his report as to Oklahoma bad faith law, including his discussion of the OUCSPA, are excluded.[3]

Mr. Cary's opinions also include speculation as to MCIC's state of mind, intent, and motives.  *See* [Doc. 92-1, pp. 5-6, ¶¶ 2, 6, 8 (opinion that MCIC placed its financial interests above those of their insureds, "forced their insured to file suit," and acted deliberately and intentionally)].  These opinions are improper and must be excluded.  *See Bright,* 2013 WL 121479, at **4-5 (citing *Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1997)) ("An expert's testimony may be excluded where it is based on subjective beliefs or unsupported speculation which is no more than *ipse dixit* guesswork."); *Graves v. Pa. Mfrs. Indem. Co.,* No. CIV-19-60-SLP, 2019 WL 1005881, at *5 (W.D. Okla. Oct. 24, 2019).  Mr. Cary's second, sixth, and eighth opinions are excluded.

---

[3] Mr. Cary's statement in his first opinion that MCIC "failed to meet those basic duties" is excluded as unhelpful and prejudicial in that "[Cary] would essentially be telling the jury what decision to reach on plaintiff's bad faith claim." *Magallan,* 2017 WL 4012964, at *10.

Mr. Cary next opines that MCIC "failed to adopt and implement reasonable standards for the investigation, evaluation, and settlement of uninsured motorist claims" and "failed to conduct proper training of their staff in the investigation, evaluation, and settlement of uninsured motorist claims." [Doc. 92-1, p. 5, ¶¶ 3-4]. However, Mr. Cary's report includes no indication that he reviewed MCIC's training materials or claims handling guidelines. [Doc. 92-1, p. 6].

Assuming that Mr. Cary did review the claims handling guidelines and training materials, his opinions are nevertheless unreliable. Mr. Hellard argues that Cary may rely on his years of experience in the industry. However, when a witness testifies based on experience, "[he or she] must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." FED. R. EVID. 702 advisory committee's notes to 2000 amendments.

> [N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

*Joiner*, 522 U.S. at 146. Mr. Cary fails to explain how his experience is reliably applied to the facts. Mr. Cary offers no discussion of the guidelines, standards, or training materials actually adopted and offered by MCIC. The court is therefore without the means to evaluate the basis of Mr. Cary's opinions.[4] Rather, the opinions are based only on the *ipse dixit* of Mr. Cary and are

---

[4] Insofar as Mr. Hellard criticizes MCIC for failing to conduct additional discovery regarding Mr. Cary's opinions, pursuant to Fed. R. Civ. P. 26, an expert report must contain "a complete statement of all opinions the witness will express *and the basis and reasons for them*." Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). Thus, "[e]xpert reports must include 'how' and 'why' the expert reached a particular result, not just his conclusory opinion." *Cohlmia v. Ardent Health Servs., LLC,* 254 F.R.D. 426, 430 (N.D. Okla. 2008). "Amended Rule 26 envisions an expert report so detailed that 'in many cases the report may eliminate the need for a deposition." *Id.* (quoting Fed. R. Civ. P. 26 advisory committee's notes to 2000 amendments).

therefore inadmissible under the *Daubert* standard.[5] *See Graves v. Mazda Motor Corp.*, 405 F. App'x 296, 300 (10th Cir. 2010) ("[Our] precedent is clear and unequivocal that the *ipse dixit* of an expert, no matter how qualified he may be, is never enough to guarantee him a ticket to admissibility."). Thus, Mr. Cary is prohibited from offering any opinions or testimony regarding MCIC's claims handling policies, procedures, guidelines or training, including his third and fourth opinions in the "Opinions" section.[6] [Doc. 92-1, p. 5, ¶¶ 3-4].

Mr. Cary also identifies certain "insurance industry standards." MCIC argues the standards should be excluded because Mr. Cary "does not identify a source or basis for *any* of these purported standards." [Doc. 92, p. 4 (emphasis in original)]. However, other federal courts in this state have considered similar arguments and concluded that they go to the weight, rather than the admissibility, of the opinions. *Magallan,* 2017 WL 4012964, at *10; *Graves*, 2019 WL 10058881, **4-5; *see also Daubert,* 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). These cases are persuasive.

Further, based on the court's review of his report, Mr. Cary "has clearly reviewed the claims file and has a sufficient factual basis to offer opinions" regarding the handling of the claim. *Magallan,* 2017 WL 4012964, at *10. "[T]he average juror is not likely to be familiar with the . .

---

[5] Further, with respect to Mr. Cary's opinions regarding training, the witness appears to opine that, because MCIC did not act in good faith in the handling of Mr. Hellard's claim, MCIC's training was necessarily inadequate. [Doc. 92-1, p. 4]. However, this does not logically follow. *See Ace Fire Underwriters Ins. Co. v. Romero*, 831 F.3d 1285, 1291 n.7 (10th Cir. 2016).

[6] MCIC argues that *any evidence* regarding its internal policies, procedures, claims handling guidelines, and training materials is inadmissible. The court need not determine this issue with respect to Mr. Cary's testimony and will address this argument in the context of MCIC's Second Motion *in Limine*. [Doc. 94].

. industry standards governing [UM] claims in Oklahoma." *Graves,* 2019 WL 10058881, at *4. Mr. Cary's thirty years of experience in the industry is sufficiently relevant to his opinions regarding industry standards. *Magallan,* 2017 WL 4012964, at *10. On this basis, the court declines to wholly exclude Mr. Cary's discussion of industry standards. MCIC may cross-examine Mr. Cary regarding the source or basis of the industry standards. Mr. Cary shall be expected to explain the insurance standards on which he relies and "may not simply direct the jury to accept [his] conclusions about a particular matter." *Graves,* 2019 WL 10058881, at *5.

Based on the foregoing, Mr. Cary "will be permitted to testify as to the custom and practice of the industry in investigating and handling of claims . . . [and he] will be permitted to testify as to the considerations involved in evaluating an insured's claim, based on industry custom and practice and/or [his] own experience." *Koontz,* 2019 WL 8331472, at *4 (quoting *Payne v. GEICO Indem. Co., No.* CIV-01-1414-HE, 2002 WL 34439222, at *2 (W.D. Okla. May 17, 2002)). However, Mr. Cary is limited to those industry standards identified in his report and emphasized as having been violated in this case. [Doc. 92-1, pp. 3-4]. Mr. Cary is prohibited from equating violation of the industry standards to bad faith. *Koontz,* 2019 WL 8331472, at *3; Further, Mr. Cary may not testify to the policy provisions or coverage under the policy. *See Bright v. Ohio Nat'l Life Assurance Corp.*, No. 11-CV-475-GKF-FHM, 2013 WL 121479, at *3 (N.D. Okla. Jan. 9, 2013) ("The jury does not need an expert to read the language of the policy.").

**Conclusion**

WHEREFORE, defendant Mid Century Insurance Company's *Daubert* Motion to Exclude the Testimony of Plaintiff's Expert Richard Cary [Doc. 92] is granted in part and denied in part. Mr. Cary may offer his opinions at trial of this matter consistent with this Order.

DATED this 8th day of February, 2021.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE